## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| HYRON FIGUEREDO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>TROPICALE FOODS, LLC,<br><br>Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Hyron Figueredo ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. According to legend, Mexican frozen desserts originated with its Aztec emperors.

2. During a respite from battle, in what is currently the State of Atlautla, the emperor noticed the snowcapped peak of the Popocatépetl volcano.



3.    Having never seen a white capped mountain, he dispatched servants to the top, seeking an elixir to aid in battle.

4.    The servants returned with buckets of fresh ice or snow, unknown given Mexico's semi-tropical climate.

5.    On their way back to camp, they gathered pineapples, coconuts and mangos, which they mixed with the ice.



6.    The emperor was so pleased with this mixture of ice and fresh fruit that he elevated them in rank.

7.    Decades later, another emperor added crema, or cream, produced in abundance by hardy Mexican cows, to this icy fruit concoction.

8.     Known as "paletas," they were thought lost to history following the invasion by the Spanish conquistadores, with their production kept secret by indigenous elders.

9.     It was not until the 1940s that the paleta reemerged in Michoacán, just several hundred miles from the snowcapped Popocatépetl volcano.

10.    That modern day paletas hail from Michoacán, in the tiny village of Tocumbo, was unsurprising, given the fertility of its land to the most delicious types of tropical fruit and its dairy production.

11.    One recent origin story tells of a Mexican salesman named Alcázar, who travelled to the United States during this period.

12.    Alcázar observed the popularity of fruit and cream-based frozen desserts on sticks, known as "popsicles."

13.    Since Mexico lacked access to the ingredients which comprised those treats, such as chemically modified sugar syrups, food dyes, stabilizers and other chemical ingredients, Alcázar relied on the abundance of fresh fruits and cream.

14.    Called "paletas" or "little sticks," the availability of these refreshing treats spread throughout Mexico, through tiny shops known as "palaterias" but mainly through street vendors.

15.    These "paleteros" relied on their pastel-colored pushcarts and bells, the Mexican equivalent of the "Mr. Softee" jingle known to young children across the

United States.[1]






16.    Since the humble paletero typically lacks access to capital, they are often unable to purchase inventory from the multinational companies which dominate the frozen dessert industry.

17.    The result is that they have little choice but to rely on traditional production methods, where small batches are the norm instead of mass production.

18.    Instead of commercial ingredients like corn syrup and artificial colors, the paletero relies on traditional ingredients found in abundance such as fruit and

---

[1]  Alpha, The Paletero is a Latino Cultural Phenomenon that is Becoming an American Icon, Ortiz Ice Cream, May 18, 2018.

cream.

19.   The past 20 years of global trade and immigration has brought paletas beyond Mexico.

20.   Each year, more "paleterias" open in American communities, introducing new generations to this Mexican dessert.

21.   Seeking to capitalize on consumer demand for authentic Mexican paletas, Tropicale Foods, LLC ("Defendant") manufactures and markets frozen desserts made from fruit and dairy ingredients under the Helados Mexico brand ("Product").



22.   The representations include the brand name, "Helados Mexico," the

iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema" or "with cream," larger and equivalent size font for "fresa" than its English equivalent of "strawberry," and the terms "paletas," "paleta de crema," and "paletas de frutos."

23. For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

24. Consumers typically lack expertise in judging food quality and are not in the habit of spending time to assess objective quality, nor would they know what to look for.

25. Brand names serve as a signal of quality in where consumers have imperfect information about a product's quality.

26. Consumers will pay a price premium for what they perceive to be authentic products linked to a specific place, such as whisky from Scotland, sake from Japan, tomatoes from Italy and paletas made in Mexico, produced with traditional methods and traditional ingredients.

27. This is because appealing to tradition reflects the need to have reference points, trust and stability.

28. The reasons include (1) an expectation that a product made in the location where it was first developed will be of higher quality and value due to expertise and local knowledge and (2) a desire to support and maintain local

traditions and cultures at the expense of commoditized products.

29.   Though consumers will expect Defendant's paletas to be made in Mexico based on the packaging and labeling, it is not made in Mexico.

30.   This was observed by YouTube personality "Hollywood Moises" in his video entitled, "Helados Mexico Tricky packaging!"[2]



31.   Moises told his followers that Helados Mexico were not made in Mexico, but in California, despite the representations to the contrary.

32.   Moises learned this from the fine print on the back and lower portion of the packaging, revealing to his viewers it was made in "Ontario, California."

---

[2] Hollywood Moises, "Helados Mexico Tricky packaging!," YouTube, Aug. 30, 2017.



33.   Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as composition, taste and the source of that taste.[3]

34.   In   response   to   an   unregulated   environment   where   companies

---

[3] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

misrepresented the origins of foods they sold, such as oranges from China or South America labeled as from Florida's groves, the Pure Food and Drug Act of 1906 declared "any food [] which is falsely branded as to the State, Territory, or country in which it is manufactured or produced" to be "misbranded." 21 U.S.C. § 8.

35.   These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

36.   Florida adopted these laws through its Food Safety Act ("FSA") and accompanying regulations. Fla. Stat. § 500.01 *et seq*.; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).

37.   These laws consider a food "misbranded" and misleading if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

38.   One way a food can be considered "misbranded" is by expressing or implying a geographic origin which is not true, i.e., "Swiss Chocolate" from Canada and "Florida Oranges" from Brazil. 21 C.F.R. § 101.18(c).

39.   The labeling of the Product as "Helados Mexico" is not "A truthful representation of geographical origin" because it is from California. 21 C.F.R. § 101.18(c)(1).

9

40.   Though "Helados Mexico" may be "A trademark or trade name," its usage applied to the Product is "deceptively misdescriptive." 21 C.F.R. § 101.18(c)(2).

41.   The Product's name of "Helados Mexico" "Has [not] been so long and exclusively used by [Tropicale Foods] that it is generally understood by the consumer to mean the product of [this company]." 21 C.F.R. § 101.18(c)(2)(i).

42.   The Product's name of "Helados Mexico" "Is [not] so arbitrary or fanciful that it is not generally understood by the consumer to suggest geographic origin," like the term "Moon pie." 21 C.F.R. § 101.18(c)(2)(ii).

43.   Since helados is the Spanish word for "ice cream," consumers seeing this term next to "Mexico," a country, will believe the Product is from Mexico. 21 C.F.R. § 101.18(c)(2)(ii).

44.   By further describing the Product as a "paleta," Spanish for "pop," short for "popsicle," along with an iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema," and larger and equivalent size fonts for "fresa" relative to "strawberry," consumers will expect these paletas are made in Mexico. 21 C.F.R. § 101.18(c)(2)(ii).

45.   The Product's name of "Helados Mexico" is not "A part of the name required by applicable Federal law or regulation." 21 C.F.R. § 101.18(c)(3).

46.   The Product's name of "Helados Mexico" is not "A name whose market

significance is generally understood by the consumer to connote a particular class, kind, type, or style of [ice cream] rather than to indicate geographical origin." 21 C.F.R. § 101.18(c)(4).

47. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $5.19 for six 3.0 fl. Oz. (88 mL) bars (net 18 fl. Oz. or 528 mL), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

48. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

49. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

50. Plaintiff is a citizen of Florida.

51. Defendant is a California limited liability company.

52. The member of Defendant is Wind Point Partners, an Illinois equity fund.

53. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

54. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at retail stores such as grocery

stores, big box stores, warehouse club stores, convenience stores, drug stores, gas stations, ethnic food stores and online, in this State and online to citizens of this State.

55.   The Court has jurisdiction over Defendant because it transacts business within Florida by selling the Product to consumers within Florida from grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, gas stations, and ethnic food stores in this State and online to citizens of this State.

56.   Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, gas stations, and ethnic food stores in this State and online to citizens of this State.

57.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

58.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origins, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

59.   Defendant has committed tortious acts outside this State by labeling the

Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origins, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

60.   Venue is in this District with assignment to the Miami Division because a substantial part of the events or omissions giving rise to these claims occurred in Miami-Dade County, which is where Plaintiff's causes of action accrued.

61.   Plaintiff purchased, paid money towards or for, used and/or consumed the Product in reliance on the representations and omissions identified here in Miami-Dade County.

62.   Plaintiff first became aware that the express and implied representations and omissions were false and misleading in Miami-Dade County.

63.   Plaintiff resides in Miami-Dade County.

## PARTIES

64.   Plaintiff Hyron Figueredo is a citizen of Miami-Dade County, Florida.

65.   Defendant Tropicale Foods, LLC is a California limited liability company.

66.   Plaintiff purchased the Product in one or more varieties including the

"fresa" or strawberry, "con crema" and/or fruit bar, between September 2019 and September 2023, at grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, gas stations, and/or ethnic food stores in Miami-Dade County, and/or other areas.

67.   Plaintiff is like most consumers and values authenticity in the products he buys, whether olive oil from Italy or scotch from Scotland.

68.   Plaintiff relied on the representations and omissions such as "Helados Mexico," pastel colors, the iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema" or "with cream," larger and equivalent size font for "fresa" than its English equivalent of "strawberry," and the terms "paletas," "paleta de crema," and "paletas de frutos," to expect the Product was made in Mexico.

69.   Plaintiff did not expect that the Product was made in California instead of Mexico.

70.   Plaintiff bought the Product at or exceeding the above-referenced price.

71.   Plaintiff paid more for the Product than he would have had he known it was not from Mexico, as he would not have bought it or would have paid less.

72.   The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

73.   Plaintiff seeks to represent the following class:

> All persons in the State of Florida who
> purchased the Product in Florida during the
> statutes of limitations for each cause of action
> alleged.

74.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

75.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

76.   Plaintiff is an adequate representative because his interests do not conflict with other members.

77.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

78.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

## COUNT I

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

80. Plaintiff incorporates by reference paragraphs 1-34.

81. The purpose of FDUTPA is to protect consumers against unfair and deceptive practices.

82. This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

83. The labeling of the Product violated FDUTPA because the representations and omissions expressly and impliedly conveyed it was from Mexico, including "Helados Mexico," pastel colors, the iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema" or "with cream," larger and equivalent size font for "fresa" than its English equivalent of "strawberry," and the terms "paletas," "paleta de crema," and "paletas de frutos," which was unfair and deceptive to consumers, since it was not from Mexico. Fla. Stat. § 501.204(1).

84. The labeling of the Product violated FDUTPA because the representations and omissions it was from Mexico when it was not was contrary to the Food Safety Act, which adopted the FFDCA and accompanying regulations.

85. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

16

86.   Plaintiff believed the Product was made in Mexico.

87.   Plaintiff paid more for the Product, would not have purchased it or paid as much if he knew that it was not from Mexico.

88.   Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than he otherwise would have.

89.   Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

90.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

**COUNT II**
False and Misleading Adverting,
Fla. Stat. § 817.41

91.   Plaintiff incorporates by reference paragraphs 1-34.

92.   Defendant made misrepresentations and omissions of material fact, that conveyed the Product was made in Mexico, including "Helados Mexico," pastel colors, the iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema" or "with cream," larger and equivalent size font

17

for "fresa" than its English equivalent of "strawberry," and the terms "paletas," "paleta de crema," and "paletas de frutos," through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising.

93.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

94.   Plaintiff paid more for the Product, would not have purchased it or paid as much if he knew that "Helados Mexico," pastel colors, the iconic blue pushcart with bells, Spanish words without English translations, such as "Con Crema" or "with cream," larger and equivalent size font for "fresa" than its English equivalent of "strawberry," and the terms "paletas," "paleta de crema," and "paletas de frutos," meant frozen desserts from California, not from Mexico.

95.   Defendant knew these statements and omissions, implied and expressed, were false and/or misleading.

96.   Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

97.   Plaintiff and class members did in fact rely upon these statements.

98.   Reliance was reasonable and justified because paletas are increasing in popularity in the United States market, and it was not unreasonable to expect them to be from Mexico.

99.   As a result of Defendant's misrepresentations and omissions, Plaintiff and class members suffered damages in the amount paid for the Product and the premium amount paid.

## COUNT III
### Fraud

100. Plaintiff incorporates by reference paragraphs 1-34.

101. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

102. WHO: Defendant, Tropicale Foods, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing and conveying it was from Mexico even though it was from California.

103. WHAT: Defendant's conduct was and continues to be fraudulent because it misleads consumers into believing the Product was from Mexico even though it was from California.

104. Defendant omitted telling consumers the Product was not from Mexico but California.

105. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

106. Defendant conducted or relied on research about consumer purchasing habits and knew almost all consumers value authenticity and would pay more for products which have a connection to their place of origin, which in this instance, was

paletas to Mexico.

107. Defendant highlighted these attributes in selling the Product to consumers.

108. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

109. Yet, Defendant has represented and/or continues to represent that the Product was made in Mexico even though it was made in California.

110. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and/or through the filing of this Complaint.

111. WHERE: Defendant's material misrepresentations and omissions, that the Product was made in Mexico even though it was made in California, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

112. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it was made in Mexico even though it was made in California.

113. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's express and implied representations and

omissions before purchasing the Product.

114. WHY: Defendant misrepresented that the Product was made in Mexico even though it was made in California, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for foods connected to their place of origin, such as olive oil from Italy or maple syrup from Vermont.

115. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   October 30, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300

West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office, P.A.

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*

**Pro Hac Vice* Application Forthcoming

22