UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-24177-ALTMAN

**HYRON FIGUEREDO**,
*individually and on behalf of all others
similarly situated*,

     *Plaintiff*,

v.

**TROPICALE FOODS, LLC**,

     *Defendant*.

_____/

## ORDER

Our Defendant, Tropicale Foods, LLC, has filed a Motion to Dismiss the Complaint ("MTD") [ECF No. 6] under Federal Rule of Civil Procedure 12(b)(6). After careful review, we now **GRANT** the motion.

### THE FACTS

Hyron Figueredo, our Plaintiff, "values authenticity in the products he buys[.]" Complaint [ECF No. 1] ¶ 67. Figueredo purchased, "in one or more varieties[,] . . . between September 2019 and September 2023," the "Helados Mexico" brand of "paletas" (the "Product"), *id.* ¶ 66—a line of "frozen desserts made from fruit and dairy ingredients" manufactured and marketed by the Defendant, Tropicale Foods, LLC, *id.* at 21.

Paletas, Figueredo tells us, are a "traditional" Mexican frozen dessert, *see id.* ¶ 18 ("[T]he paletero relies on traditional ingredients found in abundance such as fruit and cream."), which are sold "throughout Mexico . . . mainly through street vendors" who push "pastel-colored pushcarts [with] bells" attached to them, *id.* ¶¶ 14–15. "[A]ppealing to [this] tradition," *id.* ¶ 27, the Product's packaging includes several references to the paleta's Mexican roots, such as "the brand name, 'Helados Mexico,'

[a cartoon of] the iconic blue pushcart with bells, Spanish words without English translations, such as 'Con Crema' or . . . [Spanish words in] larger and equivalent size font for 'fresa' than its English [translation] of 'strawberry,' and the terms 'paletas,' 'paleta de crema,' and 'paletas de frutos.'" *Id.* ¶ 22. But the Product isn't made in Mexico. It's made in "Ontario, California," as the unambiguous text "on the back and lower portion of the packaging" discloses. *Id.* ¶ 32.

Figueredo, however, "relied on the representations and omissions" on the packaging "to expect the Product was made in Mexico." *Id.* ¶ 68. Believing he was buying authentic paletas, *id.* ¶ 69 ("Plaintiff did not expect that the Product was made in California instead of Mexico."), Figueredo "paid more for the Product than he would have had he known it was not from Mexico, as he would not have bought it or would have paid less . . . absent Defendant's false and misleading statements and omissions" on the packaging, *id.* ¶¶ 71–72.

Unhappy with the allegedly "unfair, misleading, and deceptive representations [and] omissions" on the packaging, *id.* ¶ 75, Figueredo sued Tropicale Foods on November 1, 2023, asserting three counts on behalf of himself and a putative class of "[a]ll persons in the State of Florida who purchased the Product in Florida," *id.* ¶ 73. Figueredo brings Count I under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), *see* FLA. STAT. § 501.201 *et seq.*, alleging that the "labeling of the Product violated FDUTPA because the representations and omissions expressly and impliedly conveyed it was from Mexico, . . . which was unfair and deceptive to consumers," Compl. ¶ 83 (citing FLA. STAT. § 501.204(1)). Count II similarly alleges that Tropicale Foods, "through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising," violated FLA. STAT. § 817.41's prohibition on false and misleading advertising. *See* Compl. ¶¶ 91–99. Lastly, Count III advances a claim for common-law fraud. *See id.* ¶¶ 100–15.[1]

---

[1] Figueredo has since withdrawn "his claim for common law fraud." Plaintiff's Resp. [ECF No. 16] at 1 n.1. We'll therefore **DENY as moot** the Defendant's motion to dismiss Count III. *Cf. Olear Org.,*

2

On January 9, 2024, Tropicale Foods filed its motion to dismiss, arguing that Figueredo has failed to adequately plead any of his claims. *See* MTD at 3. As to the FDUTPA claim, Tropicale Foods contends that no reasonable consumer could interpret the Product's packaging "as a statement that the Product was manufactured in Mexico." *Ibid.* And Count II should be dismissed, Tropicale Foods says, because Figueredo failed to adequately plead misrepresentation, materiality, and reliance—"as required for" his false-advertising claim. *Ibid.* We'll consider each argument in turn.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

---

*Inc. v. N. Pointe Ins. Co.*, 2012 WL 5471789, at *1 (M.D. Fla. Nov. 9, 2012) (Antoon, J.) ("Plaintiff has since withdrawn the fraud count, and thus Defendant's motion to dismiss is moot insofar as it pertains to [that count.]" (cleaned up)).

3

## ANALYSIS

Count I alleges that the "labeling of the Product violated FDUTPA because the representations and omissions expressly and impliedly conveyed it was from Mexico . . . which was unfair and deceptive to consumers, since it was not from Mexico." Compl. ¶ 83 (citing FLA. STAT. § 501.204(1)). FDUTPA "declares unlawful" any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" The statue's private cause of action is broad: A "FDUTPA violation may be based upon any law or statute that 'proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (quoting FLA. STAT. § 501.203(3)(c)).

Figueredo says that the packaging tricked *him* into believing that the Product was made in Mexico. *See, e.g.*, Compl. ¶¶ 86–88 ("Plaintiff believed the Product was made in Mexico . . . based on the misleading labeling and packaging of the Product[.]"). But whether Figueredo has stated a claim under FDUTPA isn't "determined by [his] subjective reliance on the alleged inaccuracy[.]" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016). Instead, he must "establish three *objective* elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* at 985–86 (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)).

As to the first element, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (cleaned up). Meeting this prong "requires a showing of 'probable, not [merely] possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).

4

Figueredo points to the packaging's use of the Spanish phrase "'Helados Mexico,'" the "pastel colors, the iconic blue pushcart with bells, Spanish words [with and] without English translations[,] and the terms 'paletas,' 'paleta de crema,' and 'paletas de frutos'" as express or implied deceptive "representations and omissions" that the product was made in Mexico. Compl. ¶ 83.[2] Of course, the packaging *doesn't* say that the Product was made in Mexico. On the contrary, as Figueredo *concedes*, "the back and lower portion of the packaging[ ] reveal[s] . . . it was made in 'Ontario, California.'" Compl. ¶ 32; *see also* MTD at 12 (noting that the packaging makes "no reference to the Product being made in Mexico, but instead state[s] the Product is distributed in 'Ontario, CA,' with the early 2021 to mid-2022 labeling also stating 'Made in the USA.'" (citing Ex. A ("2021–2022 6-Count Box") [ECF No. 6-1] at 4)).

Where a disclaimer of a product's origin is clear—considering the "text's font size, placement, and emphasis," *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 388, 390 (E.D.N.Y. 2017) (citing *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *8 (E.D.N.Y Sept. 24, 2014)—federal courts "routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct," *ibid.* (collecting cases); *see also, e.g.*, *Forschner Grp., Inc. v. Arrow Trading Co.*, 30 F.3d 348, 351–55 (2d Cir. 1994) (holding that the "phrase Swiss Army knife cannot fairly be read to say 'made in Switzerland' so as to be geographically

---

[2] The Complaint includes three photographs of the Product's packaging: (1) the front side of a box; (2) the back side of a box; and (3) the front side of an individual wrapper. *See* Compl. at 8. Tropicale Foods attaches to its Motion to Dismiss three *additional* examples of the Product's packaging—all apparently in use since 2021. *See* Declaration of Hyder Raheem [ECF No. 6-1] ¶¶ 5–7 (first citing Ex. A ("2021–2022 6-Count Box") [ECF No. 6-1] at 4; then citing Ex. B ("2022–2024 6-Count Box") [ECF No. 6-1] at 6–7; and then citing Ex. C ("2023–2024 30-Count Box") [ECF No. 6-1] at 8). We may "consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). That's plainly the case here. The Product's packaging "is at the very heart" of the Plaintiff's claims, *ibid.*, and the Plaintiff doesn't dispute the authenticity of these three exhibits, *see* Resp. at 1 n.2 (acknowledging that the attached labels are those that "appeared on the product packaging" during the relevant periods).

5

descriptive" where "the words 'Made in China'" appeared on the box); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252 (3d Cir. 2011) (holding that "[n]o reasonable consumer could be misled" into believing that Havana Club rum was made in Cuba where the "label clearly states on the front that the liquor is 'Puerto Rican Rum' and, on the back, that it is 'distilled and crafted in Puerto Rico'"); *Dumas v. Diageo PLC*, 2016 WL 1367511, at *5 (S.D. Cal. Apr. 6, 2016) ("Although the words are small, the contrasting white print is legible. It is likely that anyone examining the label carefully enough to read the language on the back of the label would see that the beer is brewed and bottled in Pennsylvania." (cleaned up)).

In our case, the disclaimer on the back of the packaging reads: "DISTRIBUTED BY: TROPICALE FOODS, LLC ONTARIO, CA 91762." *See* Compl. at 8; *see also* MTD at 11–12 (noting that the side or back of each label "states that it was distributed by Tropicale from 'Ontario, CA'" (first citing Ex. C ("2023–2024 30-Count Box") [ECF No. 6-1] at 8; then citing Ex. B ("2022–2024 6-Count Box") [ECF No. 6-1] at 6; and then citing 2021–2022 6-Count Box at 4)). In each instance, the text of the disclaimer is in all capital letters and appears to be at least the same size as the other text on the packaging. *See* Compl. at 8; 2021–2022 6-Count Box at 4; 2022–2024 6-Count Box at 6; 2023–2024 30-Count Box at 8. The disclaimer is also clearly visible—set off from the packaging's light blue background by dark blue letters. Because the box "clearly states in all caps and in contrasting font," *Henry v. Campbell Soup Co.*, 2023 WL 2734778, at *6 (E.D.N.Y. Mar. 31, 2023), a "factually accurate, unambiguous statement of the geographic origin," *Pernod Ricard*, 653 F.3d at 252, we don't think a reasonable consumer could purchase the Product without also noticing the disclaimer—which is "written in plain English," *Campbell Soup*, 2023 WL 2734778, at *6—that the Product is made in California, *cf. DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182, 188 (D. Mass. 2022) ("The statement that Lactaid is not a drug is in bold on the back. Any reasonable consumer reading Lactaid's label would conclude that . . . is not a drug[.]"); *Victory Global, LLC v. Fresh Bourbon, LLC*, 2022 WL

6

785039, at *7 (E.D. Ky. Mar. 14, 2022) ("[T]he back of the bottle label explicitly states that the bourbon is 'DISTILLED IN INDIANA.' Thus, . . . [the] label could not mislead any reasonable consumer about where the bourbon inside was distilled."); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017) (dismissing claim where "every single representation Plaintiff pleaded reliance on, across every medium, is accompanied by language indicating the beer is brewed in the United States"). "Concluding otherwise would 'attribute to consumers a level of stupidity that the Court cannot countenance.'" *Henry v. Nissin Foods (U.S.A.) Co.*, 2023 WL 2562214, at *6 (E.D.N.Y. Mar. 17, 2023) (quoting *Kommar v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (cleaned up)).

Trying to downplay the disclaimer's prominence, Figueredo points us to cases "from this circuit," *Marty v. Anheuser-Busch Cos., LLC,* and *Wasser v. All Market Inc.*, that (in his view) "support[ ] Plaintiff's position," Resp. [ECF No. 16] at 6 (first citing *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014) (O'Sullivan, Mag. J.); then citing *Wasser v. All Mkt., Inc.*, 2017 WL 11139701 (S.D. Fla. Nov. 13, 2017) (Scola, J.)). In *Marty*, Magistrate Judge O'Sullivan found that "a reasonable consumer [could] expect Beck's beer to be brewed in Germany, despite the statements 'Product of USA, Brauerei Beck & Co., St. Louis, MO,' and the words 'BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO' on the bottom of the carton." *Ibid.* (citing *Marty*, 43 F. Supp. at 1340). The *Wasser* Court likewise held that a "reasonable consumer [could] be misled by the phrase 'Born in Brazil,' which appears on Vita Coco tetrapaks, to believe that Vita Coco is produced in Brazil[,] . . . [even though] each container of Vita Coco also specifies the location of production[.]" *Wasser*, 2017 WL 11139701, at *5. The disclaimer on our Product's packaging, however, differs materially from the packaging at issue in *Marty* and *Wasser* in two main ways.

*One*, the disclaimers in those cases were "difficult to read," *Marty*, 43 F. Supp. at 1341, or were otherwise "covered" by other features of the packaging, *Wasser*, 2017 WL 11139701, at *5. For

7

example, the disclaimer in *Marty* could "be obscured by overhead lighting because the disclaimer is printed in a white font against a shiny, metallic silver background." *Marty*, 43 F. Supp. at 1341. Figueredo, by contrast, makes "no allegation that the [disclaimer statement here] was difficult to read or otherwise obscured." Reply [ECF No. 17] at 6; *see also* Compl. ¶ 32 (alleging only that the disclaimer was in "fine print on the back and lower portion of the packaging"). In any event, the Product's disclaimer is more like Magistrate Judge O'Sullivan's example of a *legible* label, which is "visible at any angle because the words are printed on . . . matte background." *Marty*, 43 F. Supp. at 1341.

*Two*, the labels in those cases included arguably ambiguous statements about the products' origins. *See id.* at 1342 ("[E]ven if the 'Brewed Under the German Purity Law of 1516' statement is true, a reasonable consumer may not know what compliance with the German Purity Law means."); *Wasser*, 2017 WL 11139701, at *5 ("Indeed, there is nothing on Vita Coco's packaging to indicate that 'Born in Brazil' refers to anything other than the product contained in the package."). Here, by contrast, Figueredo doesn't allege that the Product's packaging includes any similar references to being made in other countries. *See* Compl. at 5, 8 (displaying the front and back of Helados Mexico packaging). And "the fact that product names include 'Mexico' . . . is insufficient to allege that reasonable consumers could be deceived." *Romero v. Tropicale Foods, LLC*, 2021 WL 6751908, at *5 (C.D. Cal. Dec. 22, 2021) (citing *Dumas*, 2016 WL 1367511, at *3 ("'The mere fact that the word 'Jamaica' and 'Jamaican' appear on the packaging is not sufficient to support a conclusion that consumers would be confused regarding the origin . . . of the beer.'")). Unlike the packaging in *Marty* and *Wasser*, then, the only statement of geographic origin on the Product is "ONTARIO, CA." Compl. at 8. And *that* is a "factually accurate, unambiguous statement," *Pernod Ricard*, 653 F.3d at 252, that would clarify to any reasonable consumer that the Product is made in America.

Nor can we say that the other allegedly deceptive features of the packaging "eclipse . . . the accurate disclosure statement," *Bowring*, 234 F. Supp. at 391—especially when viewed in the context

8

of the packaging as a whole, *see Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) ("[A] court must analyze the message conveyed in full context." (cleaned up)); *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Romero*, 2021 WL 6751908, at *6 (dismissing claim upon a "holistic review of the Products' packaging"); *Wasser*, 2017 WL 11139701, at *5 ("[T]he Court does not consider the statement 'Born in Brazil' in a vacuum, but rather in context with the Plaintiff's allegations with respect to All Market's wider marketing campaign, and All Market's efforts to associate Vita Coco with Brazil.").

As misleading indicia of the Product's Mexican origins, Figueredo cites the packaging's use of "the brand name, 'Helados Mexico,' the iconic blue pushcart with bells, Spanish words without English translations, such as 'Con Crema' or 'with cream,' larger and equivalent size font for 'fresa' than its English equivalent of 'strawberry,' and the terms 'paletas,' 'paleta de crema,' and 'paletas de frutos.'" Compl. ¶ 22. But that's not nearly sufficient to state a viable claim. In *Romero*, for instance, Judge Bernal reviewed similar packaging of Helados Mexico products and concluded that the product name, the Spanish text, and the associated imagery weren't "likely to deceive a reasonable consumer." 2021 WL 6751908, at *4–6. While Judge Bernal's ruling has no preclusive effect here, *see id.* at *7 (dismissing the plaintiff's amended complaint with leave to amend), we're nonetheless persuaded by the *Romero* Court's reasoning on almost identical facts, *see Gutter v. E.I. DuPont de Nemours & Co.*, 2001 WL 36086589, at *6 (S.D. Fla. Mar. 27, 2001) (Klein, Mag. J.) ("[A] logical and well-reasoned decision . . . is always persuasive authority, regardless of its district of origin or its ability to bind." (cleaned up)).[3]

---

[3] As Tropicale Foods explains, "*Romero* involved the same Helados Mexico brand name, blue refrigerated pushcart image, and Spanish phrases at issue here," but "separately involved another product line sold by Tropicale under the brand name La Michoacana and claims that the plaintiffs relied on off-label Helados Mexico advertising, such as wraps found on the side of trucks and freezer

9

As to the brand name, Figueredo argues that, "[s]ince helados is the Spanish word for 'ice cream,' consumers seeing this term next to 'Mexico,' a country, will believe the Product is from Mexico." Compl. ¶ 43 (citing 21 C.F.R. § 101.18(c)(2)(ii)). But, as Judge Bernal pointed out, "'Helados Mexico' does not translate into 'Mexican Ice Creams'. . . . Instead, it translates inelegantly to 'ice creams Mexico.'" *Romero*, 2021 WL 6751908, at *4. So, this *isn't* the kind of case in which a reasonable consumer might be misled by the packaging's representation that a product is "of" or "from" another country. *See, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 468 (S.D.N.Y. 2020) ("[S]ome of Godiva's packaging and social-media advertising describe its chocolates as Belgian. . . . These representations . . . support the Court's conclusions that a reasonable consumer, reviewing Godiva's product holistically, could conclude that its chocolates are manufactured in Belgium."). And, as we've said, "the fact that product names include 'Mexico' . . . is insufficient to allege that reasonable consumers could be deceived." *Romero*, 2021 WL 6751908, at *4 (citing *Dumas*, 2016 WL 1367511, at *3).

Nor does the packaging's use of Spanish phrases—"such as 'Con Crema' or 'with cream,' larger and equivalent size font for 'fresa' than its English equivalent of 'strawberry,' and the terms 'paletas,' 'paleta de crema,' and 'paletas de frutos,'" Compl. ¶ 22—reasonably suggest that the product was made in Mexico. As Judge Bernal correctly observed, "the vast majority of the 'phrases' are translations rather than Spanish idioms or some other type of phrase that may mislead a consumer about the product['s] origin." *Romero*, 2021 WL 6751908, at *5. The "sole exception is the phrase 'con crema' on the Helados Mexico product[,] where there is no English translation." *Ibid.* But any expectation of origin that might be inferred from that one untranslated phrase is offset by the many *English* words and phrases that appear *without* Spanish translations, *see, e.g.*, Compl. at 5 (showing that

---

containers at stores." MTD at 6 n.3 (citing Complaint ¶¶ 27–32, *Romero*, 2021 WL 6751908, at *6, ECF No. 1).

the English phrase "MADE WITH REAL INGREDIENTS" appears without Spanish translation); *id.* at 8 (showing that *all* the information about nutrition, ingredients, and distribution appears in English *without* Spanish translation); *see also Romero*, 2021 WL 6751908, at *5 ("Thus, by Plaintiffs' reasoning, if 'Spanish phrases' are sufficient to make a claim that a products' packaging misleads reasonable consumers about its origin, it is far less likely to be the case when (1) the phrases are translations and (2) affirmative representations are only in English."). Since "English, not Spanish, predominates on the packaging, [and] there is nothing on the packaging in either language that references Mexico in connection with a place of manufacture," *La Barbera v. Olé Mexican Foods, Inc.*, 2023 WL 4162348, at *14 (C.D. Cal. May 18, 2023) (cleaned up), we're satisfied that no reasonable consumer would be misled by "the mere presence of words in" Spanish, *Eshelby v. L'Oréal USA, Inc.*, 664 F. Supp. 3d 417, 426 (S.D.N.Y. 2023) ("The mere presence of words in a foreign language is insufficient to mislead a reasonable consumer." (cleaned up)).

Lastly, the imagery of "the iconic blue pushcart with bells," Compl. ¶ 22, fails to "evoke[ ] 'Mexico' in such a way that would deceive a reasonable consumer into the belief that the products are manufactured there," *Romero*, 2021 WL 6751908, at *6. Contra *Romero*, *see id.* at *5 ("Plaintiffs also fail to explain why a cartoon of an 'ice cream cart' is 'Mexican[.]'"), Figueredo *has* at least alleged some connection between the pushcart and Mexico. *See* Compl. ¶ 15 (averring that "'paleteros' relied on their pastel-colored pushcarts and bells" to sell paletas throughout Mexico). Even so, we agree with the *Romero* Court that this "imagery falls far short of a 'symbol of authenticity' that is likely to deceive a reasonable consumer." *Romero*, 2021 WL 6751908, at *6; *see also ibid.* ("*But even if they did* [hint at an association with Mexico], they would remain simple embellishments that do not communicate to any reasonable consumer that the product is, in fact, made in Mexico." (emphasis added)).

In those cases where courts have found that a product's imagery was sufficient to influence a reasonable consumer's view of the product's origin, there was "some *direct tie* between the packaging

11

imagery and a (false) representation about the product's authenticity as to origin[.]" *Ibid.* (emphasis added) (first citing *Dios Rodriguez v. Ole Mexican Foods Inc.*, 2021 WL 1731604 (C.D. Cal. Apr. 22, 2021) (finding that a reasonable consumer could mistake the product's geographic origin because the packaging displayed "a Mexican flag front and center . . . with the word 'Authentic'"); then citing *Reed v. Gen. Mills, Inc.*, 2019 WL 2475706, at *1 (W.D. Wash. Jun. 13, 2019) (same where the packaging included a depiction of "a specific place [where] the Product is produced" and phrases suggesting "that the consumer can visit" that place); and then citing *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) (same where the packaging included "an image of a map of Hawaii which marks the location of the Kona Brewing Co. Brewery" and an "invitation to visit Kona's brewery and pubs in Hawaii")). In our case, by contrast, the imagery doesn't *directly* reference Mexico (as, for example, a Mexican flag would),[4] and the packaging's phrasing doesn't come close to inviting consumers to visit the paleta factory in Mexico. At most, the Product's imagery requires the consumer to *infer* some connection between a blue pushcart and Mexico. If that were sufficient to connote a product's Mexican origin, "then any symbol that has some widely accepted connection with Mexico could be described as 'traditional' and therefore misleading—such as a cartoon sombrero." *Romero*, 2021 WL 6751908, at *6. We agree with Judge Bernal that "[t]his cannot be the case." *Ibid.*

Having carefully considered the Product's packaging as a whole—and accepting the Complaint's allegations as true—we conclude that Figueredo has failed to plausibly allege that the Product's packaging would mislead a reasonable consumer into believing that the Product is made in Mexico. We therefore dismiss Count I of the Complaint. And, since Figueredo stakes his false-advertising claim on the viability of Count I, *see* Resp. at 10 ("[B]ecause Plaintiff has already established

---

[4] In fact, "the right panel of the early 2021 to mid-2022 label for the box of strawberry cream paletas, also purchased by Plaintiff, contains the additional statement that the Product was 'Made in the USA' with an accompanying *American* flag." MTD at 12 (emphasis added) (first citing 2021–2022 6-Count Box at 4; and then citing Compl. ¶ 66).

that the Product would be misleading to reasonable consumers, his plausible FDUTPA allegations support his False Advertising claim."),[5] Count II likewise fails.

\* \* \*

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 6] is **GRANTED**.

2. The Complaint [ECF No. 1] is **DISMISSED** *without prejudice*. The Plaintiff may file an amended complaint by **April 18, 2024**.

3. This case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on April 4, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[5] *See also* MTD at 17 ("To the extent Plaintiff bases his [false-advertising claim] on purported omissions . . . these allegations fail for the same reasons as those discussed [as to the FDUTPA claim]."); *see also Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1297 (M.D. Fla. 2017) (Mendoza, J.) ("The type of activity proscribed by [FLA. STAT. §] 817.41—misleading advertising—is precisely the type of unfair and deceptive trade practice that is prohibited by FDUTPA." (first citing *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1323, 1327–28 (M.D. Fla. 2007) (Conway, J.); and then citing *Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1140–41 (Fla. 3d DCA 1989))).